**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **HELDER VLADIMIR LOVO,**<br><br>      Plaintiff,<br><br>v.<br><br>**AMERICAN SUGAR REFINING, INC.,** *et al.*<br><br>      Defendants. | Civil Action No. 1:17-CV-00418-JFM |

**MEMORANDUM IN SUPPORT OF DEFENDANT
<u>RYAN WOOTERS' MOTION FOR SUMMARY JUDGMENT</u>**

Emmett F. McGee, Jr. (Federal Bar No. 08462)
Keith Hudolin (Federal Bar No. 13688)
JACKSON LEWIS P.C.
2800 Quarry Lake Drive, Suite 200
Baltimore, MD 21209
Telephone: (410) 415-2000
Facsimile: (410) 415-2001
emmett.mcgee@jacksonlewis.com
keith.hudolin@jacksonlewis.com

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

I.  STATEMENT OF THE CASE .................................................................................................. 1

II. STATEMENT OF UNDISPUTED FACTS ........................................................................... 2

III. SUMMARY JUDGMENT STANDARD ............................................................................... 4

IV. ARGUMENT ............................................................................................................................ 5

    A.  Wooters Is Entitled To Summary Judgment Because Lovo Was An Exempt Employee Under The FLSA And The MWHL. ...................................................................... 5

    B.  Wooters Is Not Liable For Any Overtime Pay Allegedly Due To Lovo. ........................... 5

        1.  Wooters Was Not Lovo's Employer. ............................................................................ 5

        2.  Lovo's claims against Wooters are even more tenuous under the MWPCL. ............... 8

V. CONCLUSION ......................................................................................................................... 8

Defendant Ryan Wooters ("Wooters") submits this Memorandum in support of his Motion for Summary Judgment.

## I.   STATEMENT OF THE CASE

Plaintiff, Helder Vladimir Lovo ("Lovo"), filed the Complaint in this matter against his employer, American Sugar Refining, Inc. ("ASR"), on February 14, 2017, alleging that ASR violated the Fair Labor Standards Act ("FLSA"), the Maryland Wage and Hour Law ("MWHL"), and the Maryland Wage Payment and Collection Law ("MWPCL"). Nearly seven months later, Lovo filed an Amended Complaint adding as a named defendant Wooters, a mid-level manager at ASR's Baltimore Refinery who supervised Lovo for a portion of Lovo's employment with ASR. Lovo has not explained why it was necessary or appropriate to add Wooters as a defendant.

As described below, there is no basis whatsoever for Lovo's claims against Wooters. As an initial matter, ASR properly classified Lovo as an exempt employee, and thus Lovo received all of the wages to which he was entitled. Wooters adopts and incorporates herein by reference ASR's Motion for Summary Judgment and the accompanying Memorandum in Support, which describes in detail the reasons why ASR's classification of Lovo as an exempt employee was proper.

In any event, Wooters cannot be held liable for any alleged unpaid overtime. Under the economic realities test, which determines when an individual is a plaintiff's "employer" and can thus be held liable for unpaid wages under the FLSA, the MWHL, and the MWPCL, Wooters was not Lovo's employer. Instead, Wooters is a mere employee of ASR with no ownership interest in the company or the Baltimore Refinery at which he works and no role in determining how ASR would pay Lovo or any other ASR employees. Accordingly, the Court should grant summary judgment in favor of Wooters on each of Lovo's claims.

## II.     STATEMENT OF UNDISPUTED FACTS

Wooters adopts and incorporates by reference the Statement of Undisputed Facts in ASR's Memorandum in Support of its Motion for Summary Judgment. In addition, the following undisputed facts are relevant to Wooters' Motion for Summary Judgment:

After graduating high school, Wooters spent five years in the United States Marine Corps. (Declaration of Matthew Ryan Wooters ("Wooters Decl."), attached as Appendix A, ¶ 2; Deposition of Matthew Ryan Wooters ("Wooters Dep."), excerpts attached as Appendix B, at 30:3-10.) After the end of his military career, he spent some time bartending and working other odd jobs until ASR hired him in February 2007 as a laborer at the Baltimore Refinery. (Wooters Decl. ¶ 2; Wooters Dep. 30:16-33:2, 34:2-14.) He soon became a Controls Technician at the Baltimore Refinery, and he remained in that role until August 2009, when he left ASR to attend college full time at Towson University. (Wooters Decl. ¶ 2; Wooters Dep. 34:2-14, 35:18-36:3, 38:2-10.)

In August 2012, Wooters left Towson University to return to ASR as a Process Supervisor at the Baltimore Refinery, and in 2015, Wooters became a Process Engineer at the Baltimore Refinery. (Wooters Decl. ¶ 2; Wooters Dep. 39:15-40:7, 40:20-41:3.) While Wooters was in this position, ASR hired Lovo as a Process Supervisor in September 2015. (Wooters Decl. ¶ 9.) Wooters did not interview Lovo and was not involved in ASR's decision to hire him. (Wooters Decl. ¶ 9.)

In June 2016, ASR promoted Wooters to Process Manager. (Wooters Decl. ¶ 2; Wooters Dep. 41:10-15.) At that time, Lovo was already employed as a Process Supervisor at the Baltimore Refinery, and Wooters thus became Lovo's direct supervisor. (Wooters Decl. ¶ 9; Wooters Dep. 56:4-8; Deposition of Helder Vladimir Lovo ("Lovo Dep."), excerpts attached as Appendix C, at 92:21-93:11.)

As Process Manager, Wooters manages the Process Department at the Baltimore Refinery. (Wooters Decl. ¶ 5; Wooters Dep. 54:20-55:3.) Wooters reports to the Refinery Manager, Kelly DeAngelo, and the Assistant Refinery Manager, Steve McSherry. (Wooters Decl. ¶ 5; Wooters Dep. 56:9-10; Deposition of Michael Moore ("Moore Dep."), excerpts attached as Appendix D, at 17:7-9.) The Refinery Manager typically reports to ASR's Vice President, North American Operations. (Wooters Decl. ¶ 5.) Mr. Wooters is strictly an employee of ASR; he has no ownership interest in ASR or the Baltimore Refinery. (Wooters Decl. ¶ 6.) He is paid an annual salary by ASR, in addition to a small performance-based annual bonus. (Wooters Decl. ¶ 6; Wooters Dep. 41-16:42:15.)

As Process Manager, Wooters does not have sole authority to terminate employees. (Wooters Decl. ¶ 13; Wooters Dep. 48:9-16; Moore Dep. 19:7-21:2.) Rather, his role includes making termination recommendations to the Refinery Manager and the Human Resources Manager and providing supporting documentation. (Wooters Decl. ¶ 13; Wooters Dep. 48:9-16; Moore Dep. 19:7-21:2.) Wooters' authority with respect to creating policies and procedures for ASR is limited to establishing operating procedures within the Process Department at the Baltimore Refinery. (Wooters Decl. ¶ 14; Wooters Dep. 53:13-54:2; Moore Dep. 24:7-20.) He does not have authority to modify ASR's human resources policies and procedures. (Wooters Decl. ¶ 14; Wooters Dep. 53:13-21.) Further, Wooters does not maintain employment records for any employees of ASR. (Wooters Decl. ¶ 12; Wooters Dep. 75:3-21.) Rather, the Human Resources Department maintains employment records such as personnel files, payroll records, and disciplinary records. (Wooters Decl. ¶ 12; Moore Dep. 34:3-7.) Wooters sends disciplinary records and similar documents that he creates or obtains to the Human Resources Department. (Wooters Decl. ¶ 12; Wooters Dep. 53:13-21.)

Wooters played no role in ASR's decision to classify Process Supervisors, including Lovo, as exempt employees. (Wooters Decl. ¶ 8.) Lovo was already classified as exempt at the time that Wooters became his supervisor, and Wooters played no role whatsoever in determining how or how much ASR would pay Lovo. (Wooters Decl. ¶ 9; Lovo Dep. 67:15-68:20.) Although Wooters directs the work and evaluates the performance of the employees under his supervision, he has no role in setting their rates or methods of pay. (Wooters Decl. ¶ 7; Wooters Dep. 61:5-7; Moore Dep. 31:10-32:4.) He does not authorize or recommend that employees receive raises and is not sure what factors ASR considers when determining whether employees will receive raises. (Wooters Decl. ¶ 7; Wooters Dep. 61:18-62:6.) Rates and methods of pay for ASR employees in the Process Department who are members of a union are determined in a collective bargaining process between ASR and the applicable unions. (Wooters Decl. ¶ 11; Moore Dep. 31:16-32:4.) Wooters does not participate in the collective bargaining process. (Wooters Decl. ¶ 11.)

Accordingly, Wooters has never made any decisions with respect to the compensation ASR paid Lovo during Lovo's employment with ASR. (Wooters Decl. ¶ 10.) For example, when Lovo received a raise in January 2017, Wooters did not participate in the decision to give Lovo a raise and did not participate in the decision as to the size of Lovo's raise. (Wooters Decl. ¶ 10.)

### III.  SUMMARY JUDGMENT STANDARD

District courts have an "affirmative obligation . . . to prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 31, 323-24 (1986)). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## IV.     ARGUMENT

### A.     Wooters Is Entitled To Summary Judgment Because Lovo Was An Exempt Employee Under The FLSA And The MWHL.

For all of the reasons stated in ASR's Motion for Summary Judgment and the accompanying Memorandum in Support, ASR properly classified Lovo as exempt from overtime pay under the FLSA and the MWHL. Accordingly, Wooters, like ASR, is entitled to summary judgment on each of Lovo's claims.

### B.     Wooters Is Not Liable For Any Overtime Pay Allegedly Due To Lovo.

#### 1.     Wooters Was Not Lovo's Employer.

As a threshold matter, to assert a viable claim under the FLSA or the MWHL, the plaintiff must demonstrate that an employer-employee relationship existed between the plaintiff and the defendant during the time period relevant to the claim. *See* 29 U.S.C. § 216(b); Md. Code, Lab. & Empl. § 3-427(a). The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203. The MWHL likewise defines employer to include "a person who acts directly or indirectly in the interest of another employer with an employee." Md. Code, Lab. & Empl. § 3-401(b).

"To determine whether an individual is an 'employer' under the FLSA, courts in this district have analyzed the economic realities of the relationship between the employee and the putative employer." *Caseres v. S & R Mgmt. Co., LLC*, Civil Action No. 12-cv-01358-AW, 2012 U.S. Dist. LEXIS 152724, at *7 (D. Md. Oct. 24, 2012). The same test applies to claims under the MWHL. *See Campusano v. Lusitano Constr. LLC*, 208 Md. App. 29, 37-38, 56 A.3d 303, 308 (2012).

> Under the economic reality test, an "employer" is someone who (1) has the authority to hire and fire employees; (2) supervises and controls work schedules or employment conditions; (3) determines the rate and method of payment; and (4) maintains employment records.

*Caseres*, 2012 U.S. Dist. LEXIS 152724 at *7 (internal quotation marks omitted). "Courts in this district have also looked to the person's job description, his or her financial interest in the enterprise, and whether or not the individual exercises control over the employment relationship." *Id.* at *8. "No single factor in the economic reality test is dispositive, and courts should consider the totality of the circumstances." *Id.*

It is undisputed that Mr. Wooters is an employee of ASR and that he has no ownership interest whatsoever in the company or in the Baltimore Refinery. Although he has authority to recommend that ASR terminate the employment of employees under his supervision, his recommendations are subject to review by the Refinery Manager and the Human Resources Manager. He has no role in setting the methods or rates of pay for any employees of ASR, including Lovo. And he does not maintain employment records for any ASR employees. In short, he is a mid-level manager who is named as a defendant in this lawsuit merely because he was Lovo's direct supervisor for a portion of Lovo's employment with ASR.

A mere supervisory relationship does not satisfy the economic realities test for joint employment. A recent case, *Montgomery v. Iron Rooster-Annapolis, LLC*, Civil Action No. RDB-16-3760, 2017 U.S. Dist. LEXIS 39472 (D. Md. Mar. 20, 2017), is instructive. In *Montgomery*, the plaintiff sought to hold the general manager of the restaurant at which she had worked liable for alleged violations of the FLSA, the MWHL, and the MWPCL. *Id.* at *2. The manager supervised the plaintiff's work, reviewed reports of her hours worked, set and approved her work schedule, and otherwise performed tasks related to managing the plaintiff's work. *Id.* at *6. Judge Bennett rejected the plaintiff's claim against the manager, holding that "[t]he record in this case reflects that [the manager] was a mere employee (agent) of [the restaurant] and its owners (principals) and at all times subject to their ultimate managerial control" and "there is no indication

6

that [the manager] had any financial interest in [the restaurant] other than as an employee." *Id.* at *7-8. Like the general manager in *Montgomery*, Wooters had authority to supervise Lovo's work, reviewed reports of his hours worked, and approved his work schedule. And like the general manager in *Montgomery*, Wooters is a mere employee of ASR, subject to the company's and his supervisors' ultimate managerial control. He is thus not Lovo's employer. *See also Arencibia v. 2401 Rest. Corp.*, 831 F. Supp. 2d 164, 176-78 (D.D.C. 2011) (granting summary judgment in favor of a restaurant's Maître d', because, among other reasons, he was not involved in setting the rate or method of payment for employees and did not maintain employment records).

Other courts have focused on supervisors' lack of involvement in the pay practices at issue in dismissing FLSA claims against them. For example, in *Baystate Alternative Staffing v. Herman*, 163 F.3d 668 (1st Cir. 1998), the First Circuit rejected a determination by the Department of Labor that a manager and the president of a temporary staffing company, neither of whom held an ownership interest in the company, were personally liable for violations of the FLSA. Although the individuals had some supervisory control over the employees and were responsible for various administrative aspects of the business, they did not have "personal responsibility for making decisions about the conduct of the business that contributed to the violations of the Act." *Id.* at 678. Similarly, in *Acosta v. JM Osaka, Inc.*, 270 F. Supp. 3d 907 (E.D. Va. 2017), the court dismissed an FLSA complaint against a restaurant manager, and "the lack of any allegations linking [the manager] to payment decisions weigh[ed] significantly against finding him to be an FLSA 'employer.'" *Id.* at 913. Like the individual defendants in *Baystate* and *Acosta,* it is undisputed that Wooters was not involved in any decisions with respect to how ASR would pay Lovo, including the decision to classify him as exempt from overtime.

Accordingly, Wooters is not an employer under the FLSA, the MWHL, or the MWPCL. "Simply stated, managers with no equity interest in the fruits of employee labor should not have to act as insurers of last resort, either to their employers or to the employees that they supervise." *Campusano*, 208 Md. App. at 41.

### 2. Lovo's claims against Wooters are even more tenuous under the MWPCL.

Lovo's attempt to hold Wooters liable under the MWPCL fails for an additional reason. Like the FLSA and the MWHL, the MWPCL only authorizes employees to bring claims for unpaid wages against their "employer." Md. Code, Lab. & Empl. § 3-507.2(a). Unlike the FLSA and the MWHL, the MWPCL "merely defines employer as 'any person who employs an individual.'" *Watkins v. C. Earl Brown, Inc.*, 173 F. Supp. 2d 40, 416 (D. Md. 2001). "This definition is 'narrower' than the definition of employer under the FLSA, in that it does not include individuals who act 'indirectly in the interest of an employer.'" *Alvarez-Soto v. B. Frank Joy, LLC*, Civil Action No. TDC-15-1120, 2017 U.S. Dist. LEXIS 97772, at *31 (D. Md. June 23, 2017).

In *Watkins*, the Court examined the meaning of "employer" under the MWPCL and concluded that "[t]he plain language, general purpose and clear intent of the MWPCL do not support an interpretation of the word 'employer' that would include a mere supervisor of another employee." *Watkins*, 173 F. Supp. 2d at 415-16 (granting summary judgment in favor of the general manager of an auto dealership, even though he determined salaries, draws, and commission rates for the plaintiff and had final approval on hiring and firing of employees). So too here.

## V. CONCLUSION

Although Lovo was employed by ASR, he has improperly named as a defendant his former supervisor, a mid-level manager at ASR's Baltimore Refinery who has no ownership stake in ASR and who had no role in determining how ASR would pay Lovo. As described above, Wooters was

not Lovo's employer under the applicable economic realities test. Accordingly, Lovo cannot pursue his claims against Wooters, and the Court should grant summary judgment in favor of Wooters on each of Lovo's claims.

Dated: February 26, 2018                                         Respectfully submitted,

                                                                  /s/
Emmett F. McGee, Jr. (Federal Bar No. 08462)
Keith Hudolin (Federal Bar No. 13688)
JACKSON LEWIS P.C.
2800 Quarry Lake Drive, Suite 200
Baltimore, MD 21209
Telephone:     (410) 415-2000
Facsimile:     (410) 415-2001
emmett.mcgee@jacksonlewis.com
keith.hudolin@jacksonlewis.com

*Attorneys for Defendants*