IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| HELDER VLADIMIR LOVO, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. 1:17-CV-00418-JFM |
| AMERICAN SUGAR REFINING, INC., *et al.* | * | |
| | * | |
| *Defendants*. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION
TO DEFENDANT WOOTERS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Helder Vladimir Lovo, by and through counsel, hereby moves for partial summary judgment against Defendant Matthew Ryan Wooters, submits this filing as his opposition to Wooters' Cross-Motion for Summary Judgment (ECF 37), and states the following in support thereof:

**I.      NATURE AND STAGE OF PROCEEDINGS**

Mr. Lovo filed this action against American Sugar Refining, Inc. ("ASR") on February 14, 2017 pursuant to the Fair Labor Standards Act ("FLSA") and corresponding State wage laws, alleging that ASR misclassified Mr. Lovo as an exempt employee and, as a result, failed to pay him all of his earned wages. ECF 1. On August 30, 2017, Mr. Lovo amended his claims, adding Mr. Ryan Wooters as an additional defendant. ECF 13.

Discovery closed on January 2, 2018. ECF 27. On February 26, 2018, Mr. Wooters filed his Cross-Motion for Summary Judgment. Pursuant to the Court's Briefing Schedule, Mr. Lovo now timely submits this Opposition and Cross-Motion for Summary Judgment. *See* ECF 35.

## II.     STATEMENT OF FACTS

Mr. Lovo has been employed by ASR from September 28, 2015 through November 24, 2017.  Ex. 2 (ASR, Interrog. Answers), Interrog. No. 10.  Mr. Lovo has been employed as a Process Supervisor throughout his employment.  *Id.*  From September 28, 2015 through January 1, 2017, Mr. Lovo was a Process Supervisor on the dock and received an annual salary of $72,000.  *Id;* Ex. 2 (ASR, Interrog. Answers), Interrog. No. 12.  Following immediately, Mr. Lovo began to work for ASR as a Process Supervisor in the Wash House and Ion Exchange making an annual salary of $73,440, until his resignation on November 24, 2017.  *Id.*

Since June 2016, Ryan Wooters has been the Process Manager that supervises Mr. Lovo.  Ex. 2 (ASR, Interrog. Answers), Interrog. No. 13.  Mr. Wooters has reviewed and approved Mr. Lovo's time entries each week since becoming his supervisor and "has found him to be diligent with respect to promptly and accurately entering his hours worked into Kronos", ASR's time keeping database and system.  Ex. 2 (ASR, Interrog. Answers), Interrog. No. 17.

It is undisputed that Mr. Lovo has worked in excess of 40 hours a week on at least several occasions.  Ex. 7 (Lovo Time Records), Bates No. Lovo 51 - 69; Ex. 5 (Wooters Depo.), 217:9-217:18, 221:11-225:7, 232:11-234:19; Ex. 1 (Wooters Answer to Amend. Complaint), Response No. 78.  However, not once has he been compensated at an overtime rate for these hours. Ex. 1 (Wooters Answer to Amend. Complaint), Response No. 79.  Mr. Wooters admits that he is aware of Mr. Lovo working in excess of 40 hours a week.  Ex. 5 (Wooters Depo.), 217:9–217:18, 221:11–225:7, 232:10–234:19.  Mr. Wooters acknowledges that he has called Mr. Lovo on Mr. Lovo's personal, rather than his work phone to discuss work related matters when Mr. Lovo was not on shift and is not an on-call employee.  Ex. 5 (Wooters Depo.), 60:15–60:16.

Mr. Wooters, as Mr. Lovo's supervisor, has many authorities and responsibilities concerning Mr. Lovo's employment with ASR. One important aspect of Mr. Wooters responsibilities is the review and approval of Mr. Lovo's weekly time entries. Mr. Wooters is responsible for ensuring the accuracy of Mr. Lovo's time entries. *Id.* at 182:3–182:10, 185:9–185:15, 200:16–201:4. Never once, however, did Mr. Wooters correct Mr. Lovo's timesheet to reflect the overtime hours Mr. Wooters knew Mr. Lovo worked. Never once was Mr. Lovo instructed to record his hours to reflect the overtime hours he has worked in the Kronos system. *See* Ex. 4 (Wooters Admissions), Response No. 17. In fact, Mr. Wooters stated that Mr. Lovo is "diligent with respect to promptly and accurately entering his hours worked into Kronos." In his deposition, Mr. Wooters admits that Mr. Lovo's time entries are not 100% accurate. Ex. 5 (Wooters Depo.), 186:15 – 188:3. He admits knowledge of times Mr. Lovo has worked hours in addition to his shift and has not seen those hours reflected in the time sheets submitted to and approved by him. *Id.* at 217:9-217:18, 221:11-225:7, 232:10-234:19.

In addition to being responsible for the accuracy of time entries of a group of process supervisors, including Mr. Lovo, Mr. Wooters also exercises numerous other authorities and responsibilities regarding the group of Process Supervisors he manages. Mr. Wooters can make hiring decisions, he is involved in termination decisions, he has the authority to suspend employees and he may issue other forms of disciplinary warnings. *Id.* at 47:19–48:5, 48:6–48:16, 51:16–52:9, 49:12–49:18. Additionally, Mr. Wooters can initiate process-related policy and procedure changes and additions, he creates employee schedules, he can control the assignments of the process supervisor he manages, he makes records that are recorded with HR, and he can initiate training programs for employees. *Id.* at 52:17–53:5, 56:11–58:12, 64:8–64:16, 74:21–75:13, 62:7–62:9, 64:5–64:7.

Beyond his authority over the process supervisors, Mr. Wooters also has tremendous spending authority on behalf of the company. Mr. Wooters has a company credit card with admittedly no limits or restriction. *Id.* at 65:12–73:4. In addition, Mr. Wooters has a $25,000 allowance he may spend on behalf of the company on company supplies through the SAP platform. *Id.* at 162:5–163:7.

### III. LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). A fact is material for purposes of summary judgment only if, when applied to the substantive law, it affects the outcome of the litigation. *Id.* at 248. Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Laura Campbell Trust v. John Hancock Life Ins. Co.,* 411 F. Supp. 2d 606, 609 (D. Md. 2006).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson,* 477 U.S. at 248–49. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex Corp.,* 477

U.S. at 324; *Anderson,* 477 U.S. at 252; *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir. 1991). In considering an adverse party's response, the Court cannot rely upon unsupported speculation; rather, the Court has an affirmative obligation to prevent factually unsupported claims and defenses from proceeding to trial. *See Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987).

## IV.     ARGUMENTS AND AUTHORITIES

### A.     *"Employer" status as defined by the FLSA and MWHL.*

The FLSA defines "Employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.A. § 203(d). An almost identical definition appears in the MWHL: "*Employer*" includes a person who acts directly or indirectly in the interest of another employer with an employee. Md. Code Ann., Lab. & Empl. § 3-401(b). The vast majority of courts have held that "employer" is to be interpreted broadly in order to achieve the intent of Congress. *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983) ("It has, indeed, been interpreted expansively"); *Falk v. Brennan,* 414 U.S. 190, 195, (1973) ("The Supreme Court described the FLSA's definition of employer as 'expansive'"); *Gionfriddo v. Jason Zink, LLC,* 769 F.Supp.2d 880, 890. (D. Md. 2011). (The definition of "employer" should "be interpreted broadly to achieve Congress's intent to provide a remedy to employees for their employers' wage and hour violations."); *see also, Boucher v. Shaw*, 572 F.3d 1087, 1090 (9th Cir. 2009).

The broad language of the statute has encouraged the courts to apply the definition of "employer" to supervisors and other managerial positions in a business or a company. *Pearson v. Prof'l 50 States Prot., LLC,* No. RDB-09-3232, 2010 WL 4225533, at *3 (D. Md. 2010) ("There is clear legal authority for the imposition of personal liability on a corporate officer that exercises

a high level of control for the FLSA violations of a corporation"). Accordingly, courts have held in many cases that supervisors are "employers" for purposes of liability under the FLSA and MWHL.

**B.** *Interpretations and tests in assessing "employer" status.*

The courts have utilized a variety of criteria in determining if an individual supervisor or manager meets the definition of "employer.*"* The Supreme Court has stated that under the FLSA, an individual may qualify as an employer if the person had "extensive managerial responsibilities and substantial control of the terms and conditions of the work of . . . [the] employees." *Falk,* 414 U.S. at 195 (1973) (internal quote omitted).

Courts evaluate an individual's liability by evaluating the totality of the circumstances. No one factor is dispositive. Rather all circumstances and facts must be considered as a whole. *Hurd v. NDL, Inc.,* No. CIV. CCB-11-1944, 2012 WL 642425, at 5 (D. Md. 2012) *citing, Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, (1947) (The determination of an employment relationship "does not depend on . . . isolated factors but rather upon the circumstances of the whole activity").

There is a plethora of factors a court may take into account in the totality of the circumstances analysis; however, several factors are consistently significant in a majority of courts' analyses. Many courts consider first, and primarily, the economic reality test factors. The economic reality test generally consists of an analysis primarily relying on four factors: does the individual "(1) have the authority to hire and fire employees; (2) supervise and control work schedules or employment conditions; (3) determine the rate and method of payment; and (4) maintain employment records." *Khalil v. Subway at Arundel Mills Office Park, Inc.,* No. CIV. CCB-09-158, 2011 WL 231793, at 2 (D. Md. 2011).

In almost every analysis, courts first analyze the putative "employer's" authority in the hiring and firing processes. It is clear that an individual with the authority to hire and fire is more akin to an employer, and more likely to be classified as such in the context of FLSA and MWHL. However, courts have gone further as to say that individuals that are even indirectly involved in the hiring or firiong processes, lend weight to the individuals "employer" status. *See, Lora v. Ledo Pizza Sys., Inc.,* No. CV DKC 16-4002, 2017 WL 3189406, at 5–6 (D. Md. 2017).

In weighing an individual's supervision and control, courts often will look at an individual's authority to supervise and control work schedules or employment conditions. *Caseres v. S & R Mgmt. Co., LLC,* No. 12-CV-01358-AW, 2012 WL 5250561, at 3 (D. Md. 2012). Courts will look at an individual's ability to suspend and implement disciplinary actions, as well as, the individual's ability to set schedules and communicate assignments. *See id.* However, the element of supervision and control does not require constant monitoring and direction of employees. *Speert v. Proficio Mortg. Ventures, LLC*, No. CIV. JKB-10-718, 2011 WL 2417133, at 3 (D. Md. 2011). ("It is not necessary to employer status to monitor employees continuously. Instead, "[c]ontrol may be restricted, or exercised only occasionally"); *see also, McFeeley v. Jackson St. Entm't, LLC*, 47 F. Supp. 3d 260, 269 (D. Md. 2014), *aff'd* 825 F.3d 235 (4th Cir. 2016). (stating that an employer's "'potential power'" to enforce its rules and manage dancers' conduct" is a form of control).

The four factors set out in economic test are not individually dispositive. Courts are required to consider the totality of the circumstances. In addition, all other facts and circumstances related to the action must be taken in to account.

C. *Mr. Wooters is an "employer" under the FLSA and MWHL*

Mr. Wooters' exercised extensive managerial control, responsibilities, and authority at ASR and specifically with regard to Mr. Lovo. Accordingly, his actions are more than sufficient to qualify Mr. Wooters as an "employer" under both the FLSA and MWHL.

Mr. Wooters makes hiring decisions and, during his deposition, he was unequivocal about the extensive authority he possesses in hiring ASR employees:

> Q: Are you involved in the hiring process for ASR?
> A: I am.
> Q: What is your role in the hiring process?
> A: My role in the hiring process is that I review resumes and interview.
> Q: Do you make hiring decisions?
> A: I do.

Ex. 5 (Wooters Depo.), 47:19–48:5; *see also,* Ex. 4 (Wooters Admissions), Response No. 2; Ex. 3 (Wooters Interrog. Resp.), No. 4. Mr. Wooters also has a meaningful and significant role with regard to the firing process, testifying as follows:

> Q: If an employee needs to be fired, are you involved in that process?
> A: I am.
> Q: Do you have the authority to terminate employees from ASR?
> A: Not directly, no.
> Q: What is your role in the process?
> A: Working with HR and documentation.
> Q: Have you -- do you make recommendations for terminations?
> A: Yes.

Ex. 5 (Wooters Depo.), 48:6–48:16, 51:16–52:9; Ex. 4 (Wooters Admissions), Response No. 3.

In Mr. Wooters' Motion for Summary Judgment, he tries to minimize his firing authority by claiming his recommendations for termination "are subject to review by the Refinery Manager, and the Human Resources Manager." ECF 37 (Wooters' MSJ), p. 8. This is a faulted approach, however, as this Court has held that even indirect involvement in the hiring or firing processes, lends weight to the individuals "employer" status. *See, Lora*, 2017 WL 3189406 at 5–6.

Mr. Wooters position regarding a limited role in firing decisions is further shown to be untenable when reviewing the arguments made in ASR's separately filed Motion for Summary.[1] ECF 36. As noted, Mr. Wooters was Mr. Lovo's supervisor. In attempting to demonstrate that Mr. Lovo is an exempt employee in ASR's Motion for Summary Judgment, ASR argues that Mr. Lovo had extensive authority with regard to firing decisions, stating:

> Lovo and other Process Supervisors have *significant authority* with respect to the hiring of longshoremen, decisions on whether to retain new employees in the Process Department following their initial training periods, discipline and *firing of operators* under their supervision, and promotion of operators under their supervision.

ECF 36-1, p. 25 (emphasis added). It is disingenuous, to the say the least, for Mr. Wooters to now argue that he has minimal firing authority, while his employer is simultaneously arguing that Mr. Wooters' subordinate (Mr. Lovo) had significant firing authority. *See id.*

While Mr. Wooters alleges that he could not "finalize" a termination himself, he has testified that his recommendations for termination to human resources are given particular weight and consideration. Ex. 5 (Wooters Depo.), 51:16–52:9. This testimony has further been corroborated by Michael Moore, who serves as ASR's Human Resources Manager. Ex. 8 (Moore Depo. Transcript), 19:4–21:2. Mr. Wooters states clearly in his February 26, 2018 declaration that ASR "gives significant weight to my recommendations" that ASR terminate an employee. Ex. 9 (Wooters Decl.), ¶ 13. According to the applicable jurisprudence, as cited above, this is enough to satisfy the "firing authority" necessary in evaluating a manager's status as an "employer." Further, Mr. Wooters also has the authority to suspend employees and to issue discipline. Ex. 5 (Wooters Depo.), 49:3–50:10; Ex. 4 (Wooters Admissions), Response Nos. 4, 5, 7; Ex. 3 (Wooters Interrog. Responses), Interrog. No. 7.

---

[1] Both Mr. Wooters and ASR are represented by the same counsel, and their respective motions were filed on the same day. *See* ECF 36, 37.

It is clear from Mr. Wooters' deposition testimony and later declaration that he has authority or at minimum significantly impacting influence on the hiring, firing, suspending and disciplining of ASR employees.  While many other factors may be taken into account, this Court has recently stated when ruling a similar motion for summary judgment regarding employer status:

> Her testimony is sufficient to establish that she has the authority to hire, fire, suspend, and issue disciplines. ***To me, that is the critical factor that is to be considered where a mid-management level employee is alleged to be a plaintiff's employer.***

Ex. 6 (J. Motz Memo to Counsel, *Swann v. TPG Hospitality, Inc., et al*., February 22, 2017) (emphasis added).

In addition to Mr. Wooters' authority to hire, fire, suspend, and discipline employees, he also has significant supervisory authority and control regarding his subordinates' employment at ASR.  Mr. Wooters determines the work schedules of employees. Ex. 5 (Wooters Depo.), 56:11–58:12.  Indeed, he testified as follows:

> Q: What is your role in terms of creating employee schedules?
> A: I have the ability to create employee schedules.
> Q: And do you, in fact, create employee schedules?
> A: I have before, yes.

*Id.* at 56:11–56:17.

> Q: And if for some reason you wanted to change the current standard schedule, would you be able to initiate that process?
> A  Yes.

*Id.* at 58:9–58:12; *see also* Ex. 4 (Wooters Admissions), Response Nos. 8, 9; Ex. 3 (Wooters Interrog. Responses), Interrog. No. 8.

Mr. Wooters also controls employee assignments.  *Id.* at 64:8–64:16.  Specifically, he is the primary person in control of Mr. Lovo's assignments and he receives status reports from Mr. Lovo. Ex. 5 (Wooters Depo.), 65:1–65:11.  Mr. Wooters offers in his interrogatory responses that

"he ha[s] authority to assign Plaintiff supervisory tasks within the Process Department." Ex. 3 (Wooters Interrog. Response), No. 15. Additionally, he can initiate and effectuate policy and procedure changes. Ex. 5 (Wooters Depo.), 52:17–53:5. He also initiates trainings for employees. *Id*. at 62:7–62:9, 64:5–64:7. Overall, Mr. Wooters supervises the day-to-day operations of all of his subordinates at ASR, including Mr. Lovo. *Id.* at 55:11 – 55:19.

Beyond day-to-day operations, Mr. Wooters is responsible for employee time entries and other employee records that are maintained with human resources, such as employee performance assessments. *Id.* at 74:21–75:13; Ex. 3 (Wooters Interrog. Responses), Nos. 2, 3; Ex. 8 (Moore Depo.), 31:16–32:9. Mr. Wooters, creates, reviews and ensures that all documentation and records are submitted to human resources in order to be maintained in individual employee files. ECF 37-3 (Wooters' Decl.), ¶ 12; Ex. 5 (Wooters Depo.), 182:3–182:10, 185:9–185:15, 200:16–201:4; *see also* Ex. 4 (Wooters Admissions), No. 10.

When it came time to conduct a deposition of a Rule 30(b)(6) corporate designee for ASR, Mr. Wooters was designated by ASR as the person with the most knowledge regarding Mr. Lovo's time records and various other aspects of Mr. Lovo's employment. Ex. 5 (Wooters Depo.), 6:5–10:18. It is part of Mr. Wooters' job to review employee time entries for accuracy and to approve the entries weekly before they are submitted to payroll. *Id.* at 182:3–182:10, 185:9–185:15, 200:16–201:4; s*ee also* Ex. 4 (Wooters Admissions), No. 10.

In addition, the performance assessments completed and submitted by Mr. Wooters regarding the employees he supervises are taken into consideration by management in determining employee compensation. Ex. 8 (Moore Depo. Transcript), 31:16–32:9. In Mr. Wooters' Motion for Summary Judgment, he argues that he has "no role in setting the methods or rates of pay for any employees of ASR." ECF 37 (Wooters' MSJ), p. 8. Mr. Moore, the ASR's Human Resources

Manager, testified that, in fact, Mr. Wooters' annual performance evaluation of the employees he supervises does impacts the pay of the employees he supervises. Ex. 8 (Moore Depo. Transcript), 31:16–32:9.

Mr. Wooters also has significant spending authority on behalf of ASR. He has a company credit card with substantial spending limits. Ex. 5 (Wooters Depo.), 65:12–73:4. For example, he has a $25,000 allowance he may spend on behalf of the company on company supplies through the SAP platform, as well as discretion to spend up to $2,000 on employee travel and $400 on "happy hour" events. *Id.* at 70:3–72:21, 162:5–163:7.

Mr. Wooters is not merely a "mid-level" supervisor. Mr. Wooters manages a team of eleven Process Supervisors, who are in turn tasked with a certain level of responsibility (*albeit*, the absolute minimum) in overseeing the work performed by other individuals. *Id.* at 61:11–61:12. Mr. Wooters has significant authority and influence in his role at ASR, the employment of his subordinates (*e.g.*, discipline, schedules, and assignments), the records reflecting an employee's hours worked, and how the company allocates a significant amount of monetary funds. Under the totality of the circumstances, Mr. Wooters is an employer for purposes of the FLSA and MWHL.

**D.**    *Mr. Wooters also meets the definition of being Mr. Lovo's employer under the MWPCL.*

Defendant argues that the slight variation in the wording in the definition of "employer" under the FLSA and the MWPCL prevents the finding of him being Mr. Lovo's employer under the MWPCL. Mr. Wooters argues that the MWPCL's definition is narrower than the FLSA, excluding individuals who act indirectly in the interest of the employer. However, Mr. Wooters has provided no evidence to show that he did not act directly in the interest of ASR. In fact, it appears that part of Wooters' job was to act in the interest of ASR.

In addition, this court recently held that "while the MWPCL and FLSA definitions of 'employer' are different, this Court has found that the 'economic reality' test guides the analysis under both statutes." *Carollo v. Fed. Debt Assistance Ass'n, LLC,* No. CV RDB-17-1220, 2017 WL 4236734, at *3 (D. Md. Sept. 25, 2017). As stated above in greater detail, under the economic reality test, Mr. Wooters was Mr. Lovo's employer. Mr. Wooters has failed to show in his Motion that he could not be found to be an employer based on the economic reality test.

As demonstrated above, Mr. Wooters was not merely a low-level supervisor. Mr. Wooters managed a team of employees; he was afforded significant authority; and he was responsible for ensuring the overall production by ASR. Accordingly, summary judgment should be granted on the issue of Mr. Lovo meeting the MWPCL's definition of employer; or, alternatively, Mr. Wooters' Motion must be denied in this regard due to the existence of genuine issues of material fact.

## V. CONCLUSION

For the reasons stated above, Mr. Lovo respectfully requests the court to grant his Motion for Partial Summary Judgment on Mr. Wooters' status as an employer under the FLSA, MWHL, and MWPCL.

Dated: March 28, 2018                                Respectfully submitted,

                                                           /s/ *Judd G. Millman*
                                                     Judd G. Millman (Fed Bar No. 18212)
                                                        judd@luchanskylaw.com
                                                     **LUCHANSKY LAW**
                                                     606 Bosley, Suite 3B
                                                     Towson, Maryland 21204
                                                     Telephone: (410) 522-1020
                                                     Facsimile: (410) 522-1021
                                                     *Attorneys for Plaintiff*